## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD D. PARKELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No.14-446-SLR |
| | ) |
| CHRISTOPHER SENATO, et al., | ) |
| | ) |
| Defendants. | ) |

Donald D. Parkell, James T. Vaughn Correctional Center, Smyrna, Delaware.  Pro se
Plaintiff.

Kenisha LaShelle Ringgold, Deputy Attorney General, Delaware Department of Justice,
Wilmington, Delaware.  Counsel for Defendants.

## MEMORANDUM OPINION

Dated: July 제6 , 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Donald D. Parkell ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, proceeds pro se and has been granted leave to proceed in forma pauperis. He filed this lawsuit on April 8, 2014, raising claims pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S. C. §§ 2000cc et seq. (D.I. 2) Presently before the court are the parties' cross-motions for summary judgment (D.I. 45, 48) and plaintiff's motion to voluntarily dismiss his demand for injunctive relief (D.I. 53). The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court will deny in part plaintiff's motion for summary judgment, will grant in part and deny in part defendants' motion for summary judgment, will hold in abeyance rulings on parties' motions for summary judgment as to the First Amendment and equal protection claims, and will grant plaintiff's motion to voluntarily dismiss the demand for injunctive relief.

## II. BACKGROUND

Prior to July 16, 2012, Delaware Department of Correction ("DOC") operational procedures required that an inmate who desired a food preference for religious reasons contact the chaplain in writing. (See D.I. 45, ex. B at SOP A083). The procedure was changed in July 2012, and now an inmate who seeks a religious diet is required to self-report a religious faith, complete and sign a religious diet participation agreement form, have it signed by security staff, and submit it directly to the food services unit where, once received, the inmate is provided the appropriate meal within 24 to 48 hours. (See

D.I. 45, ex. B Policy No. 5.3) The policy was implemented to provide the appropriate nutritional and caloric intake for all offenders in accordance with their faith-based requirements. (*Id.*) The purpose of the policy is to establish a religious diet program in support of the various faiths of the offender population housed within DOC facilities. (*Id.*)

The current DOC religious diet policy provides kosher meals to practicing Jewish inmates as well as to non-practicing Jewish inmates, but non-practicing Jewish inmates only receive kosher meals during holiday observances. (*Id.*) The religious diet policy also provides meals in accordance with the Muslim observance of Ramadan and vegetarian meals for those inmates whose religion requires meals that are not satisfied by a regular diet. (*Id.*) The cost at the DOC for a non-religious diet (i.e., a regular meal) averages $.60 per meal; a religious vegetarian diet averages $.60 per meal; and a kosher diet averages $5.82 per meal.[1] (D.I. 45, ex. E) As of December 22, 2014, one inmate received kosher meals. (D.I. 45, ex. C)

Plaintiff has been housed at the VCC since January 31, 2014. (D.I. 2) He as previously housed at the DOC's Howard R. Young Correctional Institution. (D.I. 45, ex. D) Plaintiff practices a faith that combines the practice of Wicca and Judaism. (D.I. 2, ex. 4; D.I. 45, ex. D) In his May 30, 2015 affidavit, plaintiff states that he has attempted to participate in the kosher religious diet plan for three years, but his attempts to follow God's law according to Judaic tradition have been refused. (*Id.*) Plaintiff further explains that two main tenets of his faith that cannot be abandoned and that cannot be

---

[1]The court was not provided with the cost of meals prepared for Ramadan.

reconciled with Orthodox Judaism, are his belief in a feminine counterpart to God and magic. (*Id.*) He further explains that "the belief in magic and the practice of magic is deeply and almost exclusively Jewish." (*Id.*) Any attempt at applying a name to plaintiff's belief "is almost impossible." (*Id.*) Plaintiff has "studied at length many different religions and [his] chosen path is not lightly taken. [He has] weighed logic, history and faith in the unseen through introspection, debate and commonsense. What [he has] found, [plaintiff] believe[s] in completely." (*Id.*) Plaintiff is "Jewish by all reason. [His] life is led according to the laws of Moses and the teachings of mystic scholars in Kabbalah and other sects of Jewish belief. [Plaintiff] sincerely believe[s] that God and Goddess demand that [he] only eat kosher food prepared according to Jewish law." (*Id.*) Plaintiff has "actively practiced this faith for about ten years." (*Id.*) Plaintiff states that he has written numerous descriptions to defendants to explain his beliefs, but defendants refuse to respect this sect of Judaism. (*Id.*)

In February 2014, plaintiff contacted the VCC chapel office and indicated that he wished to change his faith to Judaism. (D.I. 2, ex. 2) Defendant Chaplain Frank Pennell ("Pennell") responded on February 20, 2014, and told plaintiff that, in reviewing plaintiff's file, he saw that plaintiff was identified as Roman Catholic or Wicca. (*Id.*) Pennell asked plaintiff if he was of Jewish descent or if he had contacted a rabbi to discuss the process of converting to the Jewish faith and told plaintiff that, once he had answered the questions, Pennell would send a form for processing plaintiff's change of faith. (*Id.*) Plaintiff responded to Pennell and, on February 25, 2014, Pennell sent

plaintiff a change of faith form.  (D.I. 2, ex. 2; D.I. 45, ex. B)  Plaintiff returned the form on February 28, 2014, and Pennell approved the request on March 6, 2014.  (*Id.*)

On March 10, 2014, plaintiff received a memorandum from defendant food services administrator Christopher Senato ("Senato") advising plaintiff that he had received plaintiff's religious diet request but, for plaintiff to receive kosher meals, plaintiff needed a rabbi to verify that he was an Orthodox Jew.[2]  (D.I. 2, ex. 1)  In the early 2000's, a rabbi directed defendants on the utilization of a kosher diet for validated Jewish inmates with Orthodox Judaism as the only sect of Judaism approved for kosher diets.  (D.I. 45, ex. E)

On March 11, 2014, plaintiff submitted a grievance requesting a kosher diet. Plaintiff stated he "was a Jewish faith adherent, but [his] view of God having a female partner does not qualify him to be proclaimed Jewish by a rabbi."  (D.I. 2, ex. 3)  In the grievance, plaintiff states that he believes non-kosher food violates his soul's purpose to celebrate and worship God and the Goddess through rituals demanded within Hebrew texts.  (*Id.*)  Defendant grievance chair Matthew Dutton ("Dutton") returned the grievance as unprocessed and stated, "[i]t is the inmate's responsibility to tend to his own spiritual needs you will need to write Chaplin [sic] Pennell with your request and he will advise you what you need to do."[3]  (D.I. 2, ex. 1; D.I. 45, ex. E)  On March 28, 2014,

---

[2]The court was not provided with plaintiff's request for a kosher diet that he submitted to Senato.

[3]Dutton did not receive anything else from plaintiff after he advised him to write to Pennell.  (D.I. 45, ex. E)

4

plaintiff submitted a DOC religious diet participation agreement for "kosher practicing" signed by security staff on April 17, 2014. (D.I. 45, ex. C)

In an undated letter to Senato, plaintiff stated, "please stop refusing my kosher diet requests. My beliefs demand that I keep [k]osher to the level that I am capable of. The DOC, the food services, and the chaplain are not qualified to dictate my religious tenets." (Id.) In another undated letter, plaintiff wrote to Pennell regarding difficulties he encountered in his attempts to follow his religion and practice his faith. (D.I. 45, ex. H) Plaintiff related to Pennell that he was told that he was not "Jewish enough" for the DOC to provide him with a religious kosher diet. (Id.) Pennell responded, "please write to food services director for a food/diet form." (Id.)

On September 9, 2014, Pennell thanked plaintiff for his letter "on pursuing [his] faith." (D.I. 45, ex. A) Pennell advised plaintiff that he could use the Old Testament which includes the Torah in the practice of religious studies and advised plaintiff that he did not have other materials. (Id.) Pennell stated the other issue that needed to be addressed was plaintiff's "Jewish faith validation by an outside rabbi." (Id.) In the letter, Pennell noted that plaintiff had changed his faith to Jewish on February 28, 2014, but advised that "recognition is wholly different, this is your responsibility to have your recognition confirmed before any participation in services could be considered." (Id.) In turn, plaintiff asked Pennell to send him a Bible. (D.I. 45, ex. B) In another undated letter, plaintiff requested religious materials and asked to speak with a rabbi. (Id.)

Senato's responses to discovery state that plaintiff can "keep kosher in diet without the kosher diet plan. All vegetables and fruits are considered kosher. Foods

5

that have been manufactured and packaged with the kosher seal are kosher. The religious vegetarian diet is an available option at any of the Delaware prisons. If the plaintiff is permitted to purchase commissary, a long list of items available for his purchase are identified as kosher." (*Id.*) (D.I. 45, ex. E)

Pennell is aware that there are some groups that vary in their understanding and practice of the Jewish faith and clarifies that the Torah is specific on their observance. (*Id.*) Pennell's understanding is that, to be recognized as Jewish, a rabbi will verify family history, etc." (*Id.*) Pennell's understanding through a rabbi is that a kosher diet is required by those who are Jewish. (*Id.*) According to Pennell, plaintiff told him he is a Jewish/Wiccan and, to Pennell's knowledge this is not a recognized sect of Judaism.[4] (*Id.*) Pennell states that, since July 16, 2012, he has consistently referred religious diet requests to the food services coordinator. (D.I. 45, ex. E)

As of April 6, 2016, plaintiff was authorized to receive a kosher diet as a result of his religious accommodation request and, as represented by defense counsel, he will continue to receive the diet. (D.I. 52, ex.) In turn, plaintiff filed a motion to dismiss without prejudice his demand for injunctive relief for kosher meals. (D.I. 53)

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of

---

[4]Pennell explains that for an inmate to participate in Ramadan, the inmate "needs to be a Muslim and have taken their Shahaddah. [The] contractual Imam and Muslim community validates a list to [Pennell] each year who will be participating in Ramadan." (D.I. 45, ex. E)

demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be--or, alternatively, is--genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The judge must ask not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252. The court must not engage in the making of "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" as these "are jury functions, not those of a judge, [when] [] ruling on a

7

motion for summary judgment." *E.E.O.C. v. GEI Group, Inc.*, 616 F.3d 265, 278 (3d Cir. 2010) (citation omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. at 247-48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

Plaintiff moves for summary judgment on the grounds that: (1) defendants have completely denied his right to practice his religion; (2) no genuine issues of material fact exist to justify denial of his motion; (3) there are no disputes to the facts of this case;

8

and (4) as a matter of controlling law, the evidence must be recognized as proof

positive that defendants have violated his rights and continue to do so. (D.I. 45)

Defendants move for summary judgment on the grounds that: (1) they have Eleventh

Amendment immunity on the claims raised against them in their official capacities that

seek damages; (2) they have qualified immunity from suit as there is no evidence they

violated plaintiff's constitutional rights or placed a substantial burden with respect to

plaintiff's practicing his chosen religion; (3) plaintiff's rights were not violated under

RLUIPA; and (4) plaintiff is not similarly situated to Jewish and/or Muslim inmates who

receive dietary accommodations. (D.I. 48, 49)

## IV. DISCUSSION

As set forth in the complaint, two claims are raised: (1) denial of a kosher diet;

and (2) defendants' unequal treatment of plaintiff's religious request and the

requirements imposed upon him lack justification or a rational basis.[5]  Plaintiff has

followed his religious beliefs for ten years, and there is no evidence of record that

defendants dispute the sincerity of his belief.

### A. Injunctive Relief

Plaintiff moves to dismiss that portion of his complaint that seeks injunctive relief

given that he has been served kosher meals since April 6, 2016 and, in a document

filed with the court, defendants represent that he "will continue to receive it." (D.I. 52,

53)  The court will grant the motion.  Because RLUIPA does not allow for the recovery

---

[5]The complaint alleges that, as a class of one, defendants' requirement that
plaintiff have Jewish ancestry (as one of the possible of two ways to be recognized as
Jewish) violates his Fourteenth Amendment right to equal protection. (D.I. 2, Count
Two).

of money damages, declaratory relief is the only remaining relief potentially available to plaintiff for his RLUIPA claims. *See Payne v. Doe*, 636 F. App'x 120, 125 (3d Cir. 2016) (unpublished) (citing *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012) ("RLUIPA does not permit an action against defendants in their individual capacities . . . . Thus, RLUIPA cannot impose direct liability on defendants.").

## B. RLUIPA

Plaintiff contends defendants placed a substantial burden on his religious exercise. Conversely, defendants argue they have not and, further, plaintiff failed to provide evidence to support his position that he must have a kosher diet to practice his religion.

Under RLUIPA, 42 U.S.C. § 2000cc-1, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington v. Klem*, 497 F.3d 272, 278 (3d Cir. 2007). "A substantial burden exists where: "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Heleva v. Kramer*, 330 F. App'x 406, 409 (3d Cir. 2009) (unpublished) (quoting *Washington v. Klem*, 497 F.3d at 280).

If a litigant presents prima facie evidence that his free exercise rights were substantially burdened, the government must show that the burden is in furtherance of

10

a compelling governmental interest and is "the least restrictive means of furthering that .

. . interest." *Washington*, 497 F.3d at 277 (citing RLUIPA, 42 U.S.C. § 2000cc–1(a)).

"The least-restrictive-means standard is exceptionally demanding, and it requires the

government to show that it lacks other means of achieving its desired goal without

imposing a substantial burden on the exercise of religion by the objecting party." *Holt v.

Hobbs*, ___U.S.___, 135 S.Ct. 853, 864 (2015) (internal quotation marks and alterations

omitted).

As discussed, defendants have ceased the conduct that gave rise to plaintiff's

RLUIPA claim, and plaintiff has moved to dismiss his demand for injunctive relief, which

the court will grant. In turn, plaintiff's demand for declaratory relief is moot inasmuch as

declaratory relief cannot be obtained for alleged past wrongs given that "[t]he remedy is

. . . by definition prospective in nature." *CMR D.N. Corp. v. City of Philadelphia*, 703

F.3d 612, 628 (3d Cir. 2013). A court may still exercise jurisdiction over a case that is

otherwise moot, however, if one of four exceptions are met:

"(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the

issue is deemed a wrong capable of repetition yet evading review; (3) the defendant

voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or

(4) it is a properly certified class action suit." *Chong v. District Director, I.N.S.*, 264 F.3d

378, 384 (3d Cir. 2001). Here, plaintiff received the relief he requested when he began

receiving kosher meals in April of this year, and no secondary or collateral injuries

survive. Also, the voluntary cessation exception is inappropriate here because it is

generally not the role of the courts to second-guess the reasons behind prison

11

administrators' decisions. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979). In addition, plaintiff's claims were not brought as part of a class action suit. Finally, the "capable of repetition" exception applies when "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). "The exception . . . is narrow and available only in exceptional situations." *Rendell*, 484 F.3d at 241. Because defendants represent to the court that plaintiff will continue to receive kosher meals, it is not reasonable to expect that plaintiff will be subject to the same action. Should defendants stop providing plaintiff with a kosher diet, nothing in this decision prevents plaintiff from filing a new action. Accordingly, the court will grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment on the RLUIPA claim as there are no remedies available to plaintiff.[6]

## C. Personal Involvement

In their reply and answering brief defendants seek summary judgment on behalf of Dutton for his lack of personal involvement in any alleged wrongdoing. (D.I. 51) "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . .'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The evidence of record is that Dutton returned as unprocessed plaintiff's grievance seeking

---

[6]The same analysis applies equally to plaintiff's § 1983 claims for declaratory relief.

12

a kosher diet.  Dutton told plaintiff he needed to write to Pennell with his request and explained that Pennell would advise plaintiff on what plaintiff needed to do.

Based upon the evidence of record, no reasonable jury could find that Dutton denied plaintiff the right to exercise religion.  Instead, he advised plaintiff what steps plaintiff needed to follow to see that his spiritual needs (including receiving a kosher diet) were met.  Therefore, the court will grant defendants' motion for summary judgment in favor of Dutton.

### D. Eleventh Amendment

Defendants seek summary judgment on the claims raised against them under 42 U.S.C. § 1983 and RLUIPA based upon their immunity under the Eleventh Amendment. Plaintiff opposes on the grounds that the Eleventh Amendment does not forbid suing State officials for damages in their individual capacities and for declaratory or injunctive relief in their official capacities.[7]

The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54  (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974).  Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v*

---

[7]Plaintiff raised this objection prior to his receipt of a kosher diet and filing a motion to dismiss that portion of the complaint that seeks injunctive relief.

13

*Howard*, 353 F. App'x 667, 672 (3d Cir. 2009) (unpublished).  Accordingly, § 1983 claims for monetary damages against a state, state agency, or a state official in his official capacity are barred by the Eleventh Amendment.  *See id.*

However, the Eleventh Amendment permits suits for prospective injunctive and declaratory relief against state officials to end an ongoing violation of federal law.  *See MCI Telecomm. Corp. v. Bell Atl. of Pa.*, 271 F.3d 491, 506 (3d Cir. 2001); *Ex parte Young*, 209 U.S. 123 (1908).  "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief."  *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted).

As discussed above, upon plaintiff's motion the court will dismiss without prejudice plaintiff's claims for injunctive relief.  In addition, the State of Delaware has neither consented to plaintiff's suit nor waived its immunity and, therefore, the motion for summary judgment will be granted to the extent that plaintiff seeks monetary damages under the § 1983 claims from defendants in their official capacities.  Finally, as a matter of law, defendants are immune from suit as to the RLUIPA claims raised against them in their official capacities that seek monetary damages.  *See Payne v. Doe*, 636 F. App'x at 125 (citing *Sharp v. Johnson*, 669 F.3d at 154).

Accordingly, the court will grant the motion for summary judgment with respect to the § 1983 claims that seek monetary damages from defendants in their official capacities and the RLUIPA claims against defendants in their individual and official capacities.

14

## E. First Amendment

Plaintiff's primary claim is that he was denied a kosher diet which is a vital part of his religious beliefs.[8] As discussed, there is no dispute over plaintiff's sincerity.  In addition, the religious nature of plaintiff's dietary request establishes that he has a constitutionally protected interest, despite defendants' position that plaintiff is "a gentile offender who does not practice the Jewish faith."  (D.I. 49 at 10).

The First Amendment's protection of the right to exercise religious beliefs extends to all citizens, including inmates.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  Plaintiff raises free exercise of religion and a religious equal protection claim.  Plaintiff's free exercise and equal protection claims required him to prove that defendants' conduct was not "reasonably related to legitimate penological interests" under the four factor test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987).  *See DeHart v. Horn*, 227 F.3d 47, 61 (3d Cir. 2000) (the *Turner* analysis is "equally applicable" to equal protection claims).  In addition to assessing the legitimacy of prison regulations, courts examine whether those regulations are applied neutrally within the prison and implemented without regard to the context of the expression.  *Turner*, 482 U.S. at 90.  Turner requires "a contextual, record-sensitive analysis."  *See DeHart v. Horn*, 227 F.3d at 59 n.8.

Once a sincerely held religious belief has been demonstrated, an inmate may show that a prison regulation or practice violates the right to free exercise of religion by

---

[8]In their respective motions, the parties discuss plaintiff's ability to exercise his faith apart from the denial of a kosher diet.  The court does not construe the complaint as raising claims that defendants impeded plaintiff's ability to practice his religion except as arising from the denial of a religious diet.

15

demonstrating that it violated the "reasonableness test" set forth in *Turner*, 482 U.S. 78. The test considers whether: (1) the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) the right can be exercised only at the cost of less liberty and safety for guards and other prisoners, and the effect on prison resources in general; and (4) an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 415-18; *Turner*, 482 U.S. at 89-91. "The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity." *DeHart*, 227 F.3d at 59. The burden of persuasion in challenging the reasonableness of a prison regulation ultimately rests on the inmate, but the prison has the "slight" burden of demonstrating the first Turner factor. *See Sharp v. Johnson*, 669 F.3d at 156.

As set forth above, Policy No. 5.3 was established to provide a religious diet program to support the varied faiths of the offender population so that all inmates are provided with the "appropriate nutritional and caloric intake for all offenders in accordance with their faith-based requirements." (D.I. 2, ex. 5) The court finds that the first factor favors defendants.

The parties do not address or provide factual support with regard to the second factor - whether alternative means exist for plaintiff to exercise his right to receive a religious diet. As to the third factor - what impact the accommodation would have on inmates, prison personnel, and allocation of prison resources - defendants argue that

16

the DOC has a legitimate interest in providing meals which accommodate religious

diets, but which are also cost effective and efficient, relying upon *DeHart v. Horn*, 390

F.3d 262 (3d Cir. 2004) (finding religious dietary restrictions that required individualized

preparation and reorganization that altered the way the prison kitchen prepared meals

could not be met with only a de minimis cost to the prison).  Defendants argue that a

religious vegetarian meal is equal in cost to a regular meal, but that a kosher meal is

nearly ten times as expensive.  Nonetheless, the evidence of record indicates that

kosher meals are currently provided to inmates who practice Judaism, despite the cost.

In addition, the court was not provided with the cost of food served during Ramadan,

making it unable to compare the cost of meals for inmates who practice Islam.[9]

Defendants further argue that, if offenders are permitted to self-identify as

Jewish and request a kosher diet without parameters,[10] food costs at the DOC would

rise exponentially and this would have a negative impact on the administration of the

prison.  This argument is inconsistent with Policy No. 5.3, which allows inmates to self-

report their religion and sets forth that the DOC **shall** provide a religious diet to those

who self-report and who submit a written request on the DOC religious diet participation

agreement form.  Defendants do not explain why additional requirements not

mentioned in Policy No. 5.3 (i.e., rabbi verification that plaintiff is an Orthodox Jew or of

Jewish descent) were imposed upon plaintiff.  Finally, the court has insufficient

---

[9]Defendants state, without evidentiary support, that a religious vegetarian diet includes diets for inmates who practice Islam.  Nor does the record indicate if the religious vegetarian diet is the same or different from meals served during Ramadan.

[10]Presumably defendants refer to practicing Jews and non-practicing Jews who have been "verified" as Jewish by a rabbi.

evidence before it to address the fourth factor - whether obvious, easy alternatives exist

for inmates seeking a religious diet who do not "fit" into the specific religious categories

outlined by the DOC.[11]

Due to the paucity of evidence, the court is unable to adequately apply the

*Turner* factors to the facts of this case to determine whether the restrictions placed on

plaintiff's religious diet were reasonable.[12] Additional development of the record is

necessary. *See Wolf v. Ashcroft*, 297 F.3d 305, 310 (3d Cir. 2002) (remanding so

parties may fully develop the record for *Turner* analysis and ordering district court to

rule only after considering the factual basis developed by affidavits or depositions).

Therefore, the court will hold in abeyance the parties' motions for summary judgment as

to the First Amendment claim.

### F. Equal Protection

The court considers plaintiff's remaining claim as to defendants' requirement

that, as a class of one, he have Jewish ancestry (as one of the possible two ways to be

---

[11]Defendants' responses to plaintiff's discovery requests speak to religious diets, vegetarian diets, and kosher diets and seem to imply that a vegetarian diet is the equivalent of a kosher diet. However, the parties have not explained the options available, whether they are obvious, whether there are easy alternatives in lieu of a kosher diet, whether plaintiff is permitted to purchase commissary, why kosher diets are only available to individuals who practice Judaism, or why only Orthodox Jews receive regular kosher diets. Based upon the record, the court is unable to draw reasonable inferences in favor of any of the parties.

[12]Defendants did not provide sworn statements or affidavits to support their motion for summary judgment and rely solely on exhibits attached to plaintiff's complaint and evidence plaintiff submitted in support of his motion for summary judgment.

18

recognized as Jewish) violates his Fourteenth Amendment right to equal protection.[13]
(D.I. 2, Count Two).  The Equal Protection Clause of the Fourteenth Amendment directs
that all similarly situated individuals be treated alike.  *City of Cleburne v. Cleburne
Living Ctr.*, 473 U.S. 432, 439 (1985).  Two independent legal theories exist upon which
a plaintiff may predicate an equal protection claim:  the traditional theory and the
class-of-one theory.  Plaintiff asserts a class-of-one theory.

Under the class-of-one theory, a plaintiff may advance an equal protection claim
absent membership in a protected class if:  (1) plaintiff shows that defendants engaged
in irrational and intentional differential treatment of him when compared with similarly
situated individuals; (2) defendants did so intentionally; and (3) there was no rational
basis for the difference in treatment.  *See Village of Willowbrook v. Olech*, 528 U.S.
562, 564 (2000); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).  As
previously noted, the *Turner* analysis discussed above is "equally applicable" to
prisoners' equal protection claims.  *See Williams v. Morton*, 343 F.3d 212, 221 (3d Cir.
2003).

Plaintiff presented evidence of additional requirements he was subjected to in
order to receive a religious diet.  The evidence before the court indicates that inmates
who assert a religious belief and complete the appropriate paperwork receive religious
diets.  However, the court is unable to discern what, if any, additional requirements (like
those which plaintiff faced) are placed upon other inmates in order for them to receive

---

[13]The Equal Protection Clause of the Fourteenth Amendment exists to protect
similarly situated individuals from disparate treatment under the law or by some other
state action.  *Artway v. Attorney Gen. of New Jersey*, 81 F.3d 1235, 1267 (3d Cir.
1996).

religious diets.  Because the *Turner* analysis is "equally applicable" to prisoners' equal

protection claims, as discussed above, the court holds its ruling on the issue in

abeyance pending further development of the record by the parties.  *See* ¶ IV. F.,

*supra*.

### G.  Qualified Immunity

Defendants seek summary judgment on the claims raised against them in their

individual capacities by reason of qualified immunity.  They argue that plaintiff has failed

to show that defendants violated his rights under federal law and, moreover, that there

is no case law or precedent that could have imputed notice that the DOC was required

to provide (or plaintiff was entitled to elect to have) a kosher practicing diet.

Qualified immunity shields government officials from civil damages liability unless

the official violated a statutory or constitutional right that was clearly established at the

time of the challenged conduct.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  The

court applies a two-party analysis to claims of qualified immunity and asks:  "(1) whether

the official's conduct violated a constitutional or federal right; and (2) whether the right at

issue was clearly established."  *Sharp v. Johnson*, 669 F.3d at 159 (quotation marks

omitted).  The law is clearly established in the Third Circuit that prisoners generally are

entitled to religiously acceptable meals while in prison.  *See Potts v. Holt*, 617 F. App'x

148, 150 (3d Cir. 2015) (unpublished); *Williams v. Bitner*, 455 F.3d 186, 192 (3d Cir.

2006); *Williams v. Morton*, 343 F.3d at 217; *DeHart v. Horn*, 227 F.3d at 52, 59 & n.8.

Defendants argue that there is no evidence they violated plaintiff's constitutional

rights (First Amendment claim) or that they placed a substantial burden (RLUIPA claim)

20

on plaintiff with respect to practicing his chosen religion and, therefore, qualified immunity is appropriate. However, at this juncture, the court finds that defendants have not adduced evidence sufficient to show that their denial of plaintiff's request for a kosher diet was reasonable under *Turner*.[14]

Viewing the evidentiary record and the reasonable inferences therefrom in the light most favorable to plaintiff, defendants are not entitled to summary judgment with respect to their qualified immunity defense at this time. Therefore, the court will deny defendants' motion for summary judgment on the basis of qualified immunity without prejudice to their ability to later raise the defense.

## V. CONCLUSION

For the above reasons, the court will: (1) deny in part plaintiff's motion for summary judgment; (2) grant in part and deny in part defendants' motion for summary judgment, including granting summary judgment in favor of Matthew Dutton and finding the claim for declaratory relief under 42 U.S.C. § 1983 and RLUIPA is moot; (3) hold in abeyance rulings on the parties' motions for summary judgment as to the First Amendment and equal protection claims; (4) enter a schedule for the parties to further develop the record and to file supplemental briefs on the First Amendment and equal protection claims; and (5) grant plaintiff's motion to voluntarily dismiss without prejudice the claim for injunctive relief. The claims that remain are the First Amendment and equal protection claims pursuant to 42 U.S.C. § 1983 that seek compensatory damages from defendants in their individual capacities.

A separate order shall issue.

---

[14]The RLUIPA injunctive relief claim will be dismissed without prejudice and the relief for a declaratory judgment is moot.